## UNITED STATES *v.* JORN

No. 19.  Argued January 12, 1970—Reargued October 22, 1970—
Decided January 25, 1971

HARLAN, J., announced the judgment of the Court in an opinion in which BURGER, C. J., and DOUGLAS and MARSHALL, JJ., joined. BURGER, C. J., filed a concurring opinion, *post*, p. 487. BLACK and BRENNAN, JJ., filed a statement concurring in the judgment, *post*, p. 488. STEWART, J., filed a dissenting opinion in which WHITE and BLACKMUN, JJ., joined, *post*, p. 488.

*Richard B. Stone* argued the cause for the United States on the reargument. *Louis F. Claiborne* argued the cause for the United States on the original argument. With *Mr. Stone* on the brief on the reargument were

*Solicitor General Griswold* and *Assistant Attorney General Walters.* On the brief on the original argument were *Solicitor General Griswold, Assistant Attorney General Walters, Peter L. Strauss,* and *Joseph M. Howard.*

*Denis R. Morrill,* by appointment of the Court, 396 U. S. 899, reargued the cause and filed briefs for appellee.

MR. JUSTICE HARLAN announced the judgment of the Court in an opinion joined by THE CHIEF JUSTICE, MR. JUSTICE DOUGLAS, and MR. JUSTICE MARSHALL.

The Government directly appeals the order of the United States District Court for the District of Utah dismissing, on the ground of former jeopardy, an information charging the defendant-appellee with willfully assisting in the preparation of fraudulent income tax returns, in violation of 26 U. S. C. § 7206 (2).

Appellee was originally charged in February 1968 with 25 counts of violating § 7206 (2). He was brought to trial before Chief Judge Ritter on August 27, 1968. After the jury was chosen and sworn, 14 of the counts were dismissed on the Government's motion. The trial then commenced, the Government calling as its first witness an Internal Revenue Service agent in order to put in evidence the remaining 11 allegedly fraudulent income tax returns the defendant was charged with helping to prepare. At the trial judge's suggestion, these exhibits were stipulated to and introduced in evidence without objection. The Government's five remaining witnesses were taxpayers whom the defendant allegedly had aided in preparation of these returns.

After the first of these witnesses was called, but prior to the commencement of direct examination, defense counsel suggested that these witnesses be warned of their constitutional rights. The trial court agreed, and proceeded, in careful detail, to spell out the witness' right

not to say anything that might be used in a subsequent criminal prosecution against him and his right, in the event of such a prosecution, to be represented by an attorney. The first witness expressed a willingness to testify and stated that he had been warned of his constitutional rights when the Internal Revenue Service first contacted him. The trial judge indicated, however, that he did not believe the witness had been given any warning at the time he was first contacted by the IRS, and refused to permit him to testify until he had consulted an attorney.

The trial judge then asked the prosecuting attorney if his remaining four witnesses were similarly situated. The prosecutor responded that they had been warned of their rights by the IRS upon initial contact. The judge, expressing the view that any warnings that might have been given were probably inadequate, proceeded to discharge the jury; he then called all the taxpayers into court, and informed them of their constitutional rights and of the considerable dangers of unwittingly making damaging admissions in these factual circumstances. Finally, he aborted the trial so the witnesses could consult with attorneys.

The case was set for retrial before another jury, but on pretrial motion by the defendant, Judge Ritter dismissed the information on the ground of former jeopardy. The Government filed a direct appeal to this Court, and we noted probable jurisdiction. 396 U. S. 810 (1969). The case was argued at the 1969 Term and thereafter set for reargument at the present Term. 397 U. S. 1060 (1970).

## I

Appellee contends, at the threshold, that our decision in *United States* v. *Sisson,* 399 U. S. 267, 302–307 (1970), which followed our noting of probable jurisdiction in this case, forecloses appeal by the Government under

474

the motion-in-bar provisions of 18 U. S. C. § 3731 prior to its recent amendment.[1] The question was fully briefed and argued on reargument.

The statute provided, in relevant part, for an appeal by the Government direct to the Supreme Court "[f]rom the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy." Appellee concedes, as indeed he must under the prior rulings of this Court, that his plea of former jeopardy constituted a "motion in bar" within the meaning of the statute.[2] The issue is whether appellee had been "put in jeopardy" by virtue of the impaneling of the jury in the first proceeding before the declaration of mistrial. In *Sisson, supra,* the opinion of the Court [3]—in discussing the applicability of the motion-in-bar provision to the Government's direct appeal of the trial judge's actions there—concluded, *inter alia,* that the "put in jeopardy" language applied whenever the jury had

---

[1] These provisions of the Criminal Appeals Act have recently been amended. See n. 6, *infra.* However, the new amendment does not apply to cases begun in the District Court before the effective date of enactment. *Ibid.* Our jurisdiction over the present appeal is therefore controlled by the terms of the Criminal Appeals Act as codified at 18 U. S. C. § 3731.

[2] The common-law equivalent of the motion in bar was used to raise the defenses of prior acquittal, prior conviction, and pardon. See *United States* v. *Murdock,* 284 U. S. 141, 151 (1931). Whether the motion-in-bar provision is construed broadly to reach any plea having the effect of preventing further prosecutions, see *United States* v. *Mersky,* 361 U. S. 431, 441–443 (1960) (BRENNAN, J., concurring), or narrowly to reach only pleas in the nature of confession and avoidance, see *id.,* at 455–458 (STEWART, J., dissenting), appellee's plea of former jeopardy based on the prior declaration of mistrial would be included. Cf. *United States* v. *Blue,* 384 U. S. 251, 254 (1966). See generally *United States* v. *Sisson,* 399 U. S. 267, 300 n. 53 (1970).

[3] The portion of the Court's opinion in *Sisson* under discussion here was joined in by only four members of the Court.

been impaneled, even if the defendant might constitutionally have been retried under the double jeopardy provisions of the Fifth Amendment. 399 U. S., at 302–307.[4]

Here the jury in the first proceeding had been impaneled before the mistrial ruling, but appellee's motion to dismiss on grounds of former jeopardy was made prior to the impaneling of the second jury. The Government contends that the impaneling of the jury must be understood to apply to the jury in the proceeding to which the plea of former jeopardy is offered as a bar, rather than the jury whose impaneling was, in the first instance, essential to sustain the plea on the merits. Appellee contends that the construction put on the statute in the *Sisson* opinion requires the conclusion that the Government may not appeal when a jury in the prior proceeding for the offense in question has been impaneled.

We think the Government has the better of the argument.[5] The Court's opinion in *Sisson* dealt with the problem presented by the trial judge's order purporting to arrest the entry of judgment on the guilty verdict

---

[4] MR. JUSTICE WHITE's dissenting opinion contended that the jeopardy language applies to preclude governmental appeal only where the defendant's reprosecution would be barred by the Constitution.

[5] The Government relies in part on *United States* v. *Tateo*, 377 U. S. 463 (1964), and *United States* v. *Oppenheimer*, 242 U. S. 85 (1916), as sustaining jurisdiction under 18 U. S. C. § 3731 to review the trial court's action in granting a pretrial motion to dismiss on double jeopardy grounds after the prior proceeding ended in a mistrial. In *Tateo*, however, jurisdiction was neither raised by the parties nor considered by the Court; therefore, it is of little significance on the jurisdiction point. In *Oppenheimer*, the motion in bar in the second proceeding rested on an earlier pretrial motion based on the statute of limitations; the theory of the second plea was *res judicata*.

returned by the very jury whose impaneling was claimed to constitute "jeopardy" within the meaning of the motion-in-bar provision. The conclusion that jeopardy had attached by the impaneling of the jury in that proceeding rested on the view that the Congress was concerned, in granting the Government appeal rights in certain classes of cases, to avoid subjecting the defendant to a second trial where the first trial had terminated in a manner favorable to the defendant either because of a jury verdict or because of judicial action. See *Sisson, supra,* at 293–300. The "compromise origins" of the Criminal Appeals Act, see *id.,* at 307, reflected this concern, and that concern is an important consideration supporting the canon of strict construction traditionally applied to this statute. See *id.,* at 296–300; *Will* v. *United States,* 389 U. S. 90, 96–98 (1967).

In the mistrial situation, the judicial ruling that is chronologically analogous to the *Sisson* facts would be the declaration of a mistrial after the first jury has been impaneled. Obviously, the Government could not have appealed Judge Ritter's original declaration of mistrial. Since a mistrial ruling explicitly contemplates reprosecution of the defendant, the nonappealability of this judicial action fits with congressional action in excluding pleas in abatement from the class of cases warranting appellate review. The nonappealable status of rulings of this sort is fully explainable in terms of a policy disfavoring appeals from interlocutory rulings. See the discussion in *Will* v. *United States, supra,* at 96–98.

But it does not follow from the nonappealability of rulings which are essentially interlocutory insofar as they expressly contemplate resumption of the prosecution, that Congress intended to foreclose governmental appeal from the sustaining of a later motion in bar on the trial judge's conclusion that constitutional double

jeopardy policies require that the earlier mistrial ruling now be accorded the effect of barring reprosecution. Indeed, when we recall that pleas of former jeopardy were the paradigm illustrations of motions in bar at common law, see n. 2, *supra,* it seems much more likely that the congressional decision to allow governmental appeals from the judge's decision sustaining a motion in bar was intended to permit review of later judicial action possibly premised on erroneous theories concerning constitutional effects attaching to the earlier interlocutory ruling.

Consistently with the Court's opinion in *Sisson,* the sustaining of a motion in bar based on a plea of former jeopardy would be appealable as long as the motion in bar was sustained prior to the impaneling of the jury in the subsequent proceeding.[6] Since Judge Ritter in

---

[6] Appellee points out that Rule 12 (b)(1) of the Federal Rules of Criminal Procedure permits the defendant to raise the defense of former jeopardy on motion before or after the impaneling of the jury. See Notes of the Advisory Committee, 8 J. Moore, Federal Practice ¶ 12.01[2] (2d ed. 1970). Thus, it is suggested that the defendant may deprive the Government of its appeal simply by delaying his motion to dismiss until the jury has been impaneled. This problem, of course, is inherent in the structure of the Criminal Appeals Act prior to amendment; for example, the defendant under Rule 12 (b)(1) may also delay his statute of limitations plea until after the impaneling of the jury, see *ibid.,* thereby depriving the Government of its § 3731 appeal to this Court. Soon after the passage of the original Act, the Attorney General recognized the problem and proposed that the Act be amended to require counsel for the defendant to raise and argue such questions before jeopardy attaches. See *Sisson, supra,* at 305–306. A recently enacted amendment to the Criminal Appeals Act undertakes to deal with the problem by allowing the Government to appeal "to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." Omnibus Crime Control Act of 1970, § 14 (a)(1), 84 Stat. 1890 (January 2, 1971). However, the amend-

this case dismissed the information on appellee's plea of former jeopardy prior to the impaneling of the second jury, we conclude that the decision is directly appealable by the Government as a motion in bar before the defendant was "put in jeopardy" within the meaning of the applicable statute. Hence we proceed to the merits of appellee's claim that reprosecution after the declaration of mistrial in the earlier proceeding would violate his Fifth Amendment rights.[7]

---

ment is not applicable to any criminal case begun in any district court before the effective date of the amendment. *Id.*, § 14 (b). See also S. Rep. No. 91–1296, pp. 6–7.

[7] It is clear from the record in this case that Judge Ritter's action cannot, as two members of the Court suggest, be classified as an "acquittal" for purposes of this Court's jurisdiction over the appeal under 18 U. S. C. § 3731. First, Judge Ritter's action at the original trial clearly contemplated reprosecution of the defendant after the witnesses had consulted with attorneys. See App. 46 and Mr. Justice Stewart's dissent, *post,* at 488–489, n. 1. Judge Ritter's subsequent action dismissing the information was simply put on the ground of defendant's plea of former jeopardy, without further explanation. App. 60. But the parties below put the question of former jeopardy to Judge Ritter exclusively in terms of the Court's line of cases concerning reprosecutability after mistrial declarations without the defendant's consent. See App. 55–59, which contain the entire post-mistrial proceedings before Judge Ritter.

Of course, as we noted in *Sisson, supra,* at 290, the trial judge's characterization of his own action cannot control the classification of the action for purposes of our appellate jurisdiction. But *Sisson* goes on to articulate the criterion of an "acquittal" for purposes of assessing our jurisdiction to review: the trial judge's disposition is an "acquittal" if it is "a legal determination on the basis of facts adduced at the trial relating to the general issue of the case . . . ." *Sisson, supra,* at 290 n. 19. The record in this case is utterly devoid of any indication of reliance by Judge Ritter on facts relating to the general issue of the case, thereby surely distinguishing this case from *Sisson,* and, one would think, under the very reasoning of *Sisson,* compelling the conclusion that whatever else Judge Ritter may have done, he did not "acquit" the defendant in the relevant sense:

## II

The Fifth Amendment's prohibition against placing a defendant "twice in jeopardy" represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings.[8] A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial. And society's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws. Both of these considerations are expressed in *Green* v. *United States*, 355 U. S. 184, 187–188 (1957), where the Court noted that the policy underlying this provision "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." These considerations have led this Court to conclude that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge. See *Green* v. *United States, supra,* at 188; *Wade* v. *Hunter,* 336 U. S. 684, 688 (1949).

But it is also true that a criminal trial is, even in the best of circumstances, a complicated affair to manage. The proceedings are dependent in the first instance on

---

[8] Two Terms ago the double jeopardy provision of the Fifth Amendment was made directly applicable to the States. See *Benton* v. *Maryland,* 395 U. S. 784 (1969).

the most elementary sort of considerations, *e. g.,* the health of the various witnesses, parties, attorneys, jurors, etc., all of whom must be prepared to arrive at the courthouse at set times. And when one adds the scheduling problems arising from case overloads, and the Sixth Amendment's requirement that the single trial to which the double jeopardy provision restricts the Government be conducted speedily, it becomes readily apparent that a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide. As the Court noted in *Wade* v. *Hunter, supra,* at 689, "a defendant's valued right to have his trial completed by a particular tribunal must in some circumstances be subordinated to the public's interest in fair trials designed to end in just judgments."

Thus the conclusion that "jeopardy attaches" when the trial commences expresses a judgment that the constitutional policies underpinning the Fifth Amendment's guarantee are implicated at that point in the proceedings. The question remains, however, in what circumstances retrial is to be precluded when the initial proceedings are aborted prior to verdict without the defendant's consent.

In dealing with that question, this Court has, for the most part, explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial. Thus, in *United States* v. *Perez,* 9 Wheat. 579 (1824), this Court held that a defendant in a capital case might be retried after the trial judge had, without the defendant's consent, discharged a jury that reported itself unable to agree. Mr. Justice Story's opinion for the Court in

*Perez* expressed the following thoughts on the problem of reprosecution after a mistrial had been declared without the consent of the defendant:

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."
> *Id.,* at 580.

The *Perez* case has since been applied by this Court as a standard of appellate review for testing the trial judge's exercise of his discretion in declaring a mistrial without the defendant's consent. *E. g., Simmons* v. *United States,* 142 U. S. 148 (1891) (reprosecution not barred where mistrial declared because letter published in newspaper rendered juror's impartiality doubtful); *Logan* v. *United States,* 144 U. S. 263 (1892) (reprosecution not barred where jury discharged after 40 hours of deliberation for inability to reach a verdict); *Thompson* v. *United States,* 155 U. S. 271 (1894) (reprosecution

not barred where jury discharged because one juror had served on grand jury indicting defendant); *Wade* v. *Hunter,* 336 U. S. 684 (1949) (retrial not barred where military court-martial discharged due to tactical necessity in the field).[9]

But a more recent case—*Gori* v. *United States,* 367 U. S. 364 (1961)—while adhering in the main to the *Perez* theme of a "manifest necessity" standard of appellate review—does suggest the possibility of a variation on that theme according to a determination by the appellate court as to which party to the case was the beneficiary of the mistrial ruling. In *Gori,* the Court was called upon to review the action of a trial judge in discharging the jury when it appeared to the judge that the prosecution's questioning of a witness might lead to the introduction of evidence of prior crimes. We upheld reprosecution after the mistrial in an opinion which, while applying the principle of *Perez,* appears to tie the judgment that there was no abuse of discretion in these circumstances to the fact that the judge was acting "in the sole interest of the defendant." 367 U. S., at 369; see also the dissenting opinion of MR. JUSTICE DOUGLAS, *id.,* at 370.[10]

In the instant case, the Government, relying principally on *Gori,* contends that even if we conclude the trial judge here abused his discretion, reprosecution should be permitted because the judge's ruling "benefited" the defendant and also clearly was not compelled by bad-faith prosecutorial conduct aimed at triggering a mistrial in order to get another day in court. If the judgment as to who was "benefited" by the mistrial ruling turns on the appellate court's conclusion concern-

---

[9] See also Annotation: Double Jeopardy—Mistrial, 6 L. Ed. 2d 1509; J. Sigler, Double Jeopardy 39–47 (1969).

[10] And see Annotation, *supra,* n. 9, at 1511; Sigler, *supra,* n. 9, at 44–45.

ing which party the trial judge was, in point of personal motivation, trying to protect from prejudice, it seems reasonably clear from the trial record here that the judge's insistence on stopping the trial until the witnesses were properly warned was motivated by the desire to protect the witnesses rather than the defendant. But the Government appears to view the question of "benefit" as turning on an appellate court's *post hoc* assessment as to which party would in fact have been aided in the hypothetical event that the witnesses had been called to the stand after consulting with their own attorneys on the course of conduct that would best serve to insulate them personally from criminal and civil liability for the fraudulent tax returns. That conception of benefit, however, involves nothing more than an exercise in pure speculation. In sum, we are unable to conclude on this record that this is a case of a mistrial made "in the sole interest of the defendant." See *Gori* v. *United States, supra.*

Further, we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action. The Government contends, however, that the policies evinced by the double jeopardy provision do not reach this sort of injury; rather the unnecessarily inflicted second trial must, in the Government's view, appear to be the result of a mistrial declaration which "unfairly aids the prosecution or harasses the defense." Govt. Brief 8.

Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to

vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense. Thus, for example, reprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction. *United States* v. *Ball,* 163 U. S. 662 (1896); see *Green* v. *United States,* 355 U. S. 184, 189 (1957). The determination to allow reprosecution in these circumstances reflects the judgment that the defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decisionmaking resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error. But it is also clear that recognition that the defendant can be reprosecuted for the same offense after successful appeal does not compel the conclusion that double jeopardy policies are confined to prevention of prosecutorial or judicial overreaching. For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his "valued right to have his trial completed by a particular tribunal." [11] See *Wade* v. *Hunter,* 336 U. S., at 689.

---

[11] We think that nothing said in *United States* v. *Tateo,* 377 U. S. 463, 467 (1964), can properly be taken as indicating a contrary view. For there, even though defendant's guilty plea which aborted the trial was subsequently held to have been coerced by judicial action, the defendant nonetheless was not foreclosed of his option to go to the jury if he chose to do so, and thereafter rely on post-convic-

If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.[12] In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See *United States* v. *Perez*, 9 Wheat., at 580.

The conscious refusal of this Court to channel the exercise of that discretion according to rules based on categories of circumstances, see *Wade* v. *Hunter*, 336 U. S., at 691, reflects the elusive nature of the problem presented by judicial action foreclosing the defendant from going to his jury. But that discretion must still be exercised; unquestionably an important

---

tion proceedings to redress the wrong done to him by the judge. In other words, the question of "voluntariness" for purposes of assessing the validity of a plea of guilty—whether offered before or at trial— must be distinguished from the question of "voluntariness" for purposes of assessing reprosecutability under the Double Jeopardy Clause.

[12] Conversely, where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred. Cf. *United States* v. *Tateo*, *supra*, at 468 n. 3; n. 11, *supra*.

factor·to be considered is the need to hold litigants on both·sides to standards of responsible professional conduct in the clash of an adversary criminal process. Yet we cannot evolve rules based on the source of the particular problem giving rise to a question whether a mistrial should or should not be declared, because, even in circumstances where the problem reflects error on the part of one counsel or the other, the trial judge must still take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.

In sum, counsel for both sides perform in an imperfect world; in this area, bright-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant. The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee. Cf. *Downum* v. *United States,* 372 U. S. 734 (1963). Alternatively, the judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions. Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.

### III

Applying these considerations to the record in this case, we must conclude that the trial judge here abused his discretion in discharging the jury. Despite assurances by both the first witness and the prosecuting at-

torney that the five taxpayers involved in the litigation had all been warned of their constitutional rights, the judge refused to permit them to testify, first expressing his disbelief that they were warned at all, and then ex- pressing his views that any warnings that might have been given would be inadequate. App. 41–42. In probing the assumed inadequacy of the warnings that might have been given, the prosecutor was asked if he really intended to try a case for willfully aiding in the preparation of fraudulent returns on a theory that would not incriminate the taxpayers. When the prose- cutor started to answer that he intended to do just that, the judge cut him off in midstream and immediately discharged the jury. App. 42–43. It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declara- tion of this mistrial. *United States* v. *Perez,* 9 Wheat., at 580. Therefore, we must conclude that in the cir- cumstances of this case, appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment.

*Affirmed.*

Mr. Chief Justice Burger, concurring.

I join in the plurality opinion and in the judgment of the Court not without some reluctance, however, since the case represents a plain frustration of the right to

have this case tried, attributable solely to the conduct of the trial judge. If the accused had brought about the erroneous mistrial ruling we would have a different case, but this record shows nothing to take appellee's claims outside the classic mold of being twice placed in jeopardy for the same offense.

MR. JUSTICE BLACK and MR. JUSTICE BRENNAN believe that the Court lacks jurisdiction over this appeal under 18. U. S. C. § 3731 because the action of the trial judge amounted to an acquittal of appellee and therefore there was no discretion left to the trial judge to put appellee again in jeopardy. However, in view of a decision by a majority of the Court to reach the merits, they join the judgment of the Court.

MR. JUSTICE STEWART, with whom MR. JUSTICE WHITE and MR. JUSTICE BLACKMUN join, dissenting.

The plurality opinion today says that whenever a trial judge in a criminal case has "abused his discretion" in declaring a mistrial on his own motion, the constitutional guarantee against double jeopardy categorically operates to forestall a trial of the case on the merits. I cannot agree.

The District Judge's decision to declare a mistrial in this case was based on his belief that the prosecution witnesses, who were to testify that they had submitted false income tax returns prepared by the defendant, had not been adequately warned that they might themselves incur criminal liability by their testimony. The judge apparently intended simply to postpone the case so that the witnesses could be fully apprised of their constitutional rights,[1] and a second trial was scheduled before

---

[1] The trial judge stated:

"So this case is vacated, setting is vacated this afternoon, and it will be calendared again; and, before it is calendared again, I am

a new jury. However, before the new trial date defendant filed a motion to dismiss the information on the ground of former jeopardy, and the judge granted the motion. The Government appealed directly to this Court.[2]

It is, of course, common ground that there are many circumstances under which a trial judge may discharge a jury and order a new trial, without encountering any double jeopardy problems. One example is where the judge acts at the instance of the defendant himself. See *United States* v. *Tateo,* 377 U. S. 463, 467. Another is where the jury cannot reach a verdict, and there the trial judge may proceed on his own initiative, even over the active objection of the defendant, to declare a mistrial. *United States* v. *Perez,* 9 Wheat. 579. Cf. *Simmons* v. *United States,* 142 U. S. 148; *Wade* v. *Hunter,* 336 U. S. 684. On the other hand, there are situations where the circumstances under which the mistrial was declared may be such as to bar a future prosecution. One example is where a "judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." *Gori* v. *United States,* 367 U. S. 364, 369. I should suppose that whether misconduct of this kind occurs at the instance of the prosecutor or on the trial judge's sole initiative, there is no question but that the guarantee against double jeopardy would make another trial impermissible.

The present case does not fall neatly into any of these conventional categories. There was no request for a mistrial from defense counsel (although his suggestion that the witnesses be warned of their constitutional rights

going to have these witnesses in and talk to them again before I will permit them to testify." App. 46.

[2] I agree that the Court has jurisdiction of this appeal, for the reasons set out in Part I of the plurality opinion.

may have triggered the course of events that followed), and the case certainly cannot be analogized to that of a hung jury. Conversely, the mistrial was not requested by the prosecutor, and there is not the slightest indication that he desired it to occur. Nor is there any suggestion that this was a situation involving "harassment," or an attempt by judge or prosecutor to enhance the possibility of conviction in a second trial.

The plurality opinion purports to resolve the matter by adopting a rule of "abuse of discretion" by the trial judge. This standard is said to derive from the statement of the Court in the leading case of *United States* v. *Perez, supra,* at 580:

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."

The plurality opinion appears to construe this passage to mean that an appellate court, in determining the applicability of the double jeopardy guarantee, must measure the trial judge's action in declaring the mistrial against a

standard of good trial practice. If the trial judge has conspicuously failed to meet such a standard, then, regardless of the nature or the consequences of the error, the Constitution bars another trial. In my view, this reasoning is both overbroad and flatly inconsistent with this Court's decision in *Gori* v. *United States, supra.*

In that case, the trial judge had discharged the jury during the first day of trial, taking such action apparently to forestall prejudicial error after inferring that the prosecuting attorney's line of questioning presaged inquiry calculated to inform the jury of other crimes by the accused. The Court of Appeals held that the declaration of a mistrial under these circumstances did not prevent a new trial on the merits:

> "Here the defendant was in no way harmed by the brief trial which, indeed, revealed to him the prosecution's entire case. He was thus in a position to start anew with a clean slate, with all possibility of prejudice eliminated and with foreknowledge of the case against him. The situation was quite unlike the more troublesome problems found in various of the cases, as where the prosecution desires to strengthen his case on a new start or otherwise provokes the declaration of mistrial, or the court has acted to the prejudice of the accused, or the accused has actually been subject to two trials for essentially the same offense. On the other hand, for the defendant to receive absolution for his crime, later proven quite completely, because the judge acted too hastily in his interest, would be an injustice to the public in the particular case and a disastrous precedent for the future." 282 F. 2d 43, 48 (CA2 1960).

This Court declined to pass on the Court of Appeals' judgment that there had been no abuse of discretion, noted that the case involved neither harassment nor an

attempt to augment the chances of conviction, and concluded:

> "Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial. It would hark back to the formalistic artificialities of seventeenth century criminal procedure so to confine our federal trial courts by compelling them to navigate a narrow compass between Scylla and Charybdis. We would not thus make them unduly hesitant conscientiously to exercise their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused." 367 U. S., at 369–370.

*Gori* established, I think correctly, that the simple phrase "abuse of discretion" is not enough in itself to resolve double jeopardy questions in cases of this kind. Whether or not there has been an "abuse of discretion" sufficient to bar retrial cannot be determined without reference to the purpose and effect of the mistrial ruling. The real question is whether there has been an "abuse" of the trial process resulting in prejudice to the accused, by way of harassment or the like, such as to outweigh society's interest in the punishment of crime. It is in this context, rather than simply in terms of good trial practice, that the trial judge's "abuse of discretion" must be assessed in deciding the question of double jeopardy.[3]

---

[3] *Downum* v. *United States*, 372 U. S. 734, is not to the contrary. As the plurality opinion today points out, that case recognized that "lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee," *ante*, at 486. Failure of the prosecution to go forward with its case in an expeditious and orderly manner is quite different from even a serious error in trial procedure by the presiding judge. It is, of course, well settled that when a jury

Applying these considerations to the record in this case, it seems clear to me that a trial on the merits would not violate the constitutional guarantee. It is quite true, as the plurality opinion insists, that the mistrial was declared for the benefit of the witnesses rather than in the "sole interest of the defendant." But except for the inconvenience of delay always caused by a mistrial, the judge's ruling could not possibly have injured the defendant. Had the witnesses heeded the trial judge's advice, it is at least possible that the defendant's position might have been very substantially improved by their refusal to testify upon the grounds of the guarantee against compulsory self-incrimination. The line of questioning that resulted in the mistrial may have been initiated by defense counsel with just such a result in mind. There is, of course, no showing of an intent on the part of either the prosecutor or the judge to harass the defendant or to enhance the chances of conviction in a second trial. And as in *Gori*, the defense was given a complete preview of the Government's case. Even assuming that the trial judge's action was plainly improper by any standard of good trial practice, the circumstances under which the mistrial was declared did not involve "abuse" of a kind to invoke the constitutional guarantee against double jeopardy.

I respectfully dissent from the judgment of the Court.

---

verdict is reversed on appeal because of an error by the trial judge, a new trial is permitted, *e. g., Forman* v. *United States*, 361 U. S. 416; *Bryan* v. *United States*, 338 U. S. 552. And in *United States* v. *Tateo*, 377 U. S. 463, the Court held retrial not barred by the Double Jeopardy Clause where the first trial was terminated on a plea of guilty coerced by clearly improper statements by the trial judge during the proceedings.