**STATE of Missouri, Respondent,**

v.

**Richard Herman AGUILAR, Appellant.**

**No. 56675.**

Supreme Court of Missouri,
Division No. 2.

April 10, 1972.

---

------◆------

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Philip H. Schwarz, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; John J. Cosgrove, Public Defender, of counsel.

STOCKARD, Commissioner.

Appellant was found guilty by a jury of burglary in the second degree, and sentenced by the court, the habitual criminal act being charged and found applicable, to imprisonment for a term of ten years with credit for the time he was confined in jail.

The sufficiency of the evidence is not challenged but we shall briefly outline the circumstances. A jury reasonably could find that about 2:30 o'clock of the morning of March 24, 1970, Police Officers Welch and Eber investigated an alarm at the Smith-Grieves Printing Company in Kansas City. The officers saw appellant and Gilbert Aguilar, appellant's brother, run from the building. They did not stop when ordered to do so, and the officers shot at them and both were wounded and apprehended. The building had been broken into.

Appellant's trial began in the Circuit Court of Jackson County on December 28, 1970. During the cross-examination of Officer Welch counsel for appellant asked him: "And it's a fact, is it, that Gilbert Aguilar had to have his leg amputated

as the result of the shot you fired into it?" An objection was sustained, and the court stated that the amputation of the leg of Gilbert Aguilar had nothing to do with the impeachment of the witness. Thereafter counsel for appellant asked Officer Welch if he had testified in the trial of Gilbert Aguilar. The State again objected and requested a protective order forbidding inquiry into this irrelevant area. The order was not made, but the court stated: "I am sure counsel is aware that the outcome of another trial has no bearing on the issues of this matter." Following this counsel for appellant asked: "Now, the case against Gilbert Aguilar was dismissed, wasn't it?" The question was not answered. The State objected and requested a mistrial. After a recess the court granted the mistrial, and made this statement in explanation:

> Let the record show that the Court has considered the State's motion for a mistrial and it's the Court's feeling that the question with reference to a companion case having been dismissed is so prejudicial to the State's case that there would be no relief that could erase the matter from the minds of the jury and that it's a matter that is sufficiently prejudicial that in the Court's discretion the Court is sustaining the State's motion for a mistrial.

The trial of appellant before a different jury was started the following day, over the objection of appellant, and as previously noted, the jury returned a verdict of guilty of burglary in the second degree.

Appellant's first point is that by declaring a mistrial after the jury was sworn in the first trial, and requiring him to be tried before a second jury, he was twice placed in jeopardy for the same offense.

The Fifth Amendment to the Constitution of the United States provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," and in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.

2d 707, it was held that the guarantee of the Fifth Amendment against double jeopardy is enforceable against the states through the Fourteenth Amendment. Although Missouri could by Constitution or statute, be more restrictive than the requirement of the Fifth Amendment, as construed by the federal courts, the Fifth Amendment requirements are the minimum permissible standards. The provision of Art. I, § 19, Constitution of Missouri, V.A. M.S. that "nor shall any person be put again in jeopardy of life ·or liberty for the same offense, after being once acquitted by a jury," does not strictly apply since appellant was not acquitted by a jury, but "the common-law rule that no person shall for the same offense be twice put in jeopardy is in force in this state * * *, and precludes a second conviction and punishment for the same offense." State v. Toombs, 326 Mo. 981, 986, 34 S.W.2d 61, 63. We find no readily discernible difference between the Fifth Amendment guarantee against double jeopardy and the common law guarantee as applied in this State. State v. Richardson, Mo., 460 S.W. 2d 537.

■ The prohibition against placing a defendant "twice in jeopardy" represents a constitutional policy of finality for the defendant's benefit, but as stated in United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, "A criminal trial is, even in the best of circumstances, a complicated affair to manage," and it was held in Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." The United States Supreme Court, for the most part, has declined "to formulate rules based on categories of circumstances which will permit or preclude retrial." United States v. Jorn, supra. In United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165, as

early as 1824, the United States Supreme Court stated:

* * * the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; * * But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

■ The double jeopardy clause does not guarantee a defendant that in all circumstances the government will be prepared to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense. For example, reprosecution for the same offense is permitted where the defendant obtains a reversal on appeal of a conviction. Green v. United States, 355 U.S. 184, 189, 78 S.Ct. 221, 2 L.Ed.2d 199. "But it is also clear that recognition that the defendant can be reprosecuted for the same offense after successful appeal does not compel the conclusion that double jeopardy policies are confined to prevention of prosecutorial or judicial overreaching." United States v. Jorn, supra. However, the doctrine of manifest necessity "stands as a command to trial judges not to foreclose the defendant's option [to have his trial completed] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continua-

tion of the proceedings," and "unquestionably an important factor to be considered [in a scrupulous exercise of discretion] is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process." United States v. Jorn, supra.

In this case counsel for appellant had to know that the result in the case of appellant's brother was totally irrelevant to the issues in appellant's case, and in addition to what necessarily had to be of knowledge to trained counsel, the court had admonished that "the outcome of another trial has no bearing on the issues of this matter." Notwithstanding, counsel for appellant, with what we must conclude was premeditated and deliberate conduct, brought before the jury the fact that the case against appellant's co-conspirator and companion in the commission of the burglary for which appellant was on trial had been dismissed. We do not view the matter as though defense counsel erroneously but in good faith attempted to ask an improper question.

 Whether a mistrial is required to protect the interest of the public in having a fair trial which will result in a just judgment is a matter of discretion on the part of the trial court, limited only by the concept that there must be manifest necessity to abort a trial over the objection of the defendant. United States v. Jorn, supra. In the exercise of this discretion the trial court can and should consider that when such prejudicial matters are intentionally injected into a case and the trial is permitted to continue, in the event of an acquittal because of the prejudicial matter being presented to the jury, the State has no right of appeal to obtain a new and fair trial. Also, another factor, "unquestionably an important factor" is the need to hold litigants "to standards of responsible professional conduct in the clash of an adversary criminal process." United States v. Jorn, supra.

 The trial court did not in the circumstances of this case abuse its discretion by granting a mistrial at the request of the State, and for that reason appellant has not been subjected to double jeopardy in violation of constitutional standards.

Appellant's second and third points may be considered together. He asserts that the court erred in receiving in evidence a photograph of an automobile owned by his brother, Gilbert Aguilar, and a photograph of a bill of sale for the automobile showing that it had been purchased by his brother.

Officer Welch testified that near the building of the Smith-Grieves Printing Company he saw a Ford Mustang parked on a public street, and that on the back seat there was a bill of sale for that automobile made out to Gilbert Aguilar. Exhibit 5 was identified by Officer Welch as a photograph of that automobile, and Exhibit 6 was identified as a photograph of the back seat of the automobile in which was shown the bill of sale lying on the seat. Both exhibits were admitted in evidence. Appellant first contends that Exhibit 5 should not have been admitted because there was no evidence connecting him with the automobile. He also asserts that the court admitted the exhibits "upon an offer of proof by the prosecuting attorney" and when there was no evidence actually received.

The record shows a lengthy discussion between the court and counsel concerning the two exhibits, and it is not clear exactly what occurred, except that the exhibits were admitted into evidence. However, if the exhibits were properly admitted, and we hold that they were, it is immaterial whether the reason for doing so can readily be gathered from the record.

 The evidence established that appellant and Gilbert Aguilar were acting together in the commission of the burglary. In this event the acts of either done in the furtherance of the burglary could be

shown. State v. Garton, Mo., 371 S.W.2d 283. Exhibit 6 tended to show the ownership of the automobile, and the presence at or near the scene of the automobile of one of the co-actors was a relevant fact of which proof was proper, State v. Ward, Mo., 457 S.W.2d 701, even though it was by circumstantial evidence. State v. Fields, Mo., 434 S.W.2d 507. In addition Officer Welch testified to everything that was shown by the photographs, and there is no challenge on this appeal to the admission of that testimony. At most the photographs were cumulative evidence. We find no error.

Appellant's fourth and last point in his brief was expressly withdrawn.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.