Richard Herman AGUILAR, Petitioner,

v.

Harold R. SWENSON, Warden,
Respondent.

Civ. A. No. 20277-3.

United States District Court,
W. D. Missouri, W. D.

Oct. 17, 1972.

Ronald M. Sokol, Asst. Federal Public Defender, Kansas City, Mo., for petitioner.

Kenneth Romines, Asst. Mo. Atty. Gen., Jefferson City, Mo., for respondent.

## FINAL JUDGMENT AND ORDER DENYING PETITION FOR HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

This is a petition for federal habeas corpus by a state convict in custody at the Missouri State Penitentiary. Petitioner seeks an adjudication that his conviction and sentence were imposed upon him illegally in violation of his federal constitutional rights. The petitioner is

in custody under a judgment and sentence of the Circuit Court of Jackson County, state of Missouri, in which he was convicted of second degree burglary under the Missouri Habitual Criminal Act, § 556.280, RSMo (1949), V.A.M.S.

Petitioner states that he was convicted by a jury of the above offense; that his sentence was imposed on the 4th day of March, 1971, for a period of ten years; that he appealed from the judgment of conviction and imposition of sentence to the Missouri Supreme Court; that the judgment of conviction and imposition of sentence was affirmed by the appellate court in State v. Aguilar, Mo. 1972, 478 S.W.2d 351; that petitioner filed a petition for federal habeas corpus in this Court which was dismissed for failure to exhaust state remedies on February 22, 1971, in Civil Action No. 19082–3; and that petitioner was represented by counsel at all stages of the proceedings against him and on his postconviction petition in Civil Action No. 19082–3.

Petitioner's claim for relief is based upon his contention that he was "placed in double jeopordy (sic) at his second trial when his first trial was declared to be a mistrial by the court on motion of the state . . . ." Petitioner contends that he has exhausted the state remedies currently available to him by directly appealing his conviction to the highest court of this state and by properly raising on that appeal the identical contentions which are raised in the petition at bar and securing from that court, applying current federal standards, adverse rulings on the merits of those contentions. Respondent's counsel erroneously agrees that petitioner's currently available state remedies have been exhausted, when in fact they have not.

## I  EXHAUSTION OF STATE REMEDIES

The trial court transcript of proceedings and the other files and records in this case show the following facts. Petitioner's trial began on December 28, 1970. During cross-examination of Curtis Welch, the Kansas City, Missouri, police officer who arrested petitioner, counsel for petitioner asked the following question:

"And it's a fact, is it, that Gilbert Aguilar [petitioner's brother] had to have his leg amputated as a result of the shot you fired into it?" (Tr. 61.)

The state's objection to the question as irrelevant and prejudicial was sustained. Thereafter, counsel for petitioner asked Welch the following question:

"Did you testify in the case of Gilbert Aguilar as a result of this action?" (Tr. 64.)

The state again objected and requested a protective order prohibiting petitioner's counsel from going "into the results or what happened to Gilbert Aguilar . . . because it clearly has no bearing on any issue in this case." (Tr. 64.) The state's request for protective order was denied. In denying the request, the state trial court stated:

"The Court can't anticipate what questions, but I don't see there is any harm and the objection at this point is overruled . . . I am sure counsel is aware that the outcome of another trial has no bearing on the issues of this matter, but I can't anticipate questions." (Tr. 65.)

Thereafter, counsel for petitioner asked:

"Now, the case against Gilbert Aguilar was dismissed, wasn't it?" (Tr. 67.)

Then the counsel for the state objected. The objection was sustained and the question was not answered. The state then moved for a mistrial in words as follows:

"Your Honor, that is exactly what we just talked about. That is precisely the protective order I just asked for. It was my understanding that the outcome of the other case has no bearing on this case. The State will ask for a mistrial." (Tr. 67.)

In granting the motion for mistrial, the Court stated:

"Let the record show that the Court has considered the State's motion for a mistrial and it's the Court's feeling that the question with reference to a companion case having been dismissed is so prejudicial to the State's case that there would be no relief that could erase the matter from the minds of the jury and that it's a matter that is sufficiently prejudicial that in the Court's discretion the court is sustaining the State's motion for a mistrial and the jury will be discharged and the case reset for 2:00 p. m. on Tuesday, December 29th, 1970." (Tr. 68 and 69.)

Petitioner was tried before a different jury the next day, over the objection of petitioner, and, as previously stated herein, the jury returned a verdict of guilty.

In his supplemental traverse, petitioner states that "there is not an adequate record before this Court for a determination of the issue presented if said issue is decided upon a factual determination as to who 'caused' the mistrial . . . . There is no evidentiary showing in the present record, absent an opportunity for Mr. Schwarz [petitioner's state trial counsel] to explain his actions, whereupon a fair finding may be made as to his motives." He further states that "The Opinion of the Missouri Supreme Court, State v. Aguilar, 478 S.W.2d 351 (1972), justified and upheld the action of the trial court upon a determination that it was caused by a deliberate and unjustifiable act of defense counsel."

Petitioner was thereafter directed to file a written offer of proof stating the facts to which Mr. Schwarz will testify including the facts concerning Mr. Schwarz's motive in asking the question which prompted the Circuit Court of Jackson County to declare a mistrial. The State's and petitioner's briefs on appeal in State v. Aguilar, *supra,* were also directed to be filed.

Petitioner's offer of proof shows that Schwarz will testify to the following facts:

\* \* \* \* \* \*

"3. That he appeared as counsel in the trial of [State v. Aguilar, Crim. Action No. C–39637, Sixteenth Judicial Circuit of Missouri] before the Honorable William J. Peters on December 28, 1970.

"4. That during the course of trial, the Assistant Prosecuting Attorney brought forth from the witness, Curtiss Welch, Patrolman, Kansas City Police Department, the identity and filial relationship of one Gilbert Aguilar.

"5. That the [State] also brought forth from [Welch] the fact that he had shot at and wounded said Gilbert Aguilar in his leg as he attempted to leave the scene of the investigation.

"6. That the State also brought forth from said witness the fact that he had administered first aid treatment to said Gilbert Aguilar immediately upon his being wounded.

"7. Having received information that, in fact, the wounded leg of Gilbert Aguilar was amputated due to injuries received by its being shot and delays in obtaining proper medical aid, Mr. Schwarz would testify that he attempted to impeach the testimony of the aforesaid Curtis Welch by bringing forth the fact of the loss of Gilbert Aguilar's leg and the reasons therefor. (Mr. Schwarz's statement of record is contained at pp. 61–63 of the transcript of trial.)

"8. Thereafter, in an attempt to impeach the trial testimony of said Curtis Welch, Mr. Schwarz began inquiry into prior testimony at the preliminary hearing of the cause. The Officer's theretofore clear memory of events at this point became very vague. In an attempt to impeach his disclaimer of memory whether he had, in fact, testified in the preliminary hearings of Gilbert Aguilar and Richard Aguilar, and in an attempt to impeach

his statement that the right of preliminary hearing had been waived, Mr. Schwarz asked the question, 'Now the case against Gilbert Aguilar was dismissed wasn't it?' (Tr. 67).

"Mr. Schwarz intended . . . to bring forth the fact that the case against Gilbert Aguilar had been dismissed due to sympathy for the loss of his leg resulting from lack of proper medical attention at the scene of the wounding. This, in an attempt to impeach the prior testimony concerting (sic) the immediacy of first aid rendered."

■ The appellate briefs were ordered filed to enable this Court to determine whether all the material facts were available to the Supreme Court of Missouri on direct appeal, including the factual contentions of petitioner concerning the motive of trial counsel in asking the question or questions which caused the trial court to declare a mistrial. From an examination of the files and records in this case, including petitioner's offer of proof and the briefs on appeal to the Missouri Supreme Court and the opinion of the Missouri Supreme Court, it is apparent that not all of the material facts regarding the declaration of mistrial were before the Missouri Supreme Court on petitioner's appeal in State v. Aguilar, *supra*. Because his claim of double jeopardy was raised on direct appeal, petitioner was necessarily limited to the record made in connection with the actual trial proceedings. See, e. g., Tanner v. United States (C.A.8) 401 F.2d 281, cert. den. 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806; State v. Montgomery, Mo.1968, 424 S.W.2d 744. Some of the factual contentions which petitioner would have this Court consider in deciding the merits of his claim of double jeopardy, as stated in his offer of proof of the testimony of

his counsel, if admissible would be new evidence which was not presented to the Supreme Court of Missouri, to the trial court at the trial or in a post-conviction motion under Missouri Criminal Rule 27.26, V.A.M.R.

Petitioner should be afforded the opportunity to present all material evidence bearing on the propriety of the trial court's declaration of mistrial in a full and fair evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. However, before this Court considers the new evidence which petitioner wishes to present in this Court for the first time, and the merits of his post-conviction contentions, the Missouri courts should first be given the opportunity to hear petitioner's evidence and decide the merits of his post-conviction contentions in light thereof. White v. Swenson (W.D.Mo.) 261 F.Supp. 42, 58.[1] See also Alewine v. Swenson (W.D.Mo.) 352 F.Supp. 1190 (1972). Missouri Criminal Rule 27.26 is currently available for this purpose but petitioner has made no effort to employ this remedy. He could have promptly filed a post-conviction motion and requested that the direct appeal and post-conviction motion be heard simultaneously. Cf. State v. Gray, Mo.1972, 478 S.W.2d 654.

■ In the absence of exceptional circumstances not stated to be present in this case, petitioner is required to exhaust his currently adequate and available remedies in the Missouri courts. Section 2254, Title 28, United States Code; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438; Bosler v. Swenson (C.A.8) 423 F.2d 257; White v. Swenson, *supra*. Petitioner should therefore file a motion to vacate his sentence on the grounds asserted here under Missouri

---

1. In White v. Swenson, *supra*, at p. 58, this Court stated as follows:
"Under these circumstances, *and subject only to allegations of newly discovered evidence (which in any event must first be presented to the state trial court)*, this Court would be able to reach the legal questions presented without the necessity of granting any further and additional evidentiary hearing." (Emphasis added.)

Criminal Rule 27.26. Petitioner should also appeal to the Missouri Supreme Court from any adverse decision of the state trial court on his motion. In the absence of exceptional circumstances not stated to be present in this case, only when the Missouri Supreme Court has ruled adversely to petitioner on the merits of his contentions can his currently available and adequate state remedies be deemed exhausted for the purposes of federal habeas jurisdiction. Fay v. Noia, *supra*; Cox v. Nash (W.D.Mo.) 226 F.Supp. 87; Lindner v. Peterson (W.D.Mo.) 324 F.Supp. 1261.

## II  THE MERITS OF THE CLAIM

■■  Assuming, in the alternative, that Aguilar's claim for relief is presently cognizable in this Court, the petition should be denied on the merits. Petitioner's offer of proof does not create a material issue of fact that, even if accepted as true, would warrant the granting of relief which he seeks. Petitioner's offer of proof concerning Mr. Schwarz's subjective intentions in propounding the question is insufficient to raise a material issue of fact. This is true because (1) his subjective intentions would not excuse the prejudicial error created by the improper question propounded by him and (2) his statement of motive simply comprises an unsound *ex post facto* factual claim and legal argument on purposes which would not justify the propounding of the improper question. The proposed testimony of petitioner's trial counsel offers

no legally cognizable justification of his prejudicial misconduct, and in its very statement reveals its lack of substance. No material issue of fact being present, an evidentiary hearing is not required. Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524.[2] In Townsend v. Sain, *supra*, the Supreme Court stated that except in cases where a federal evidentiary hearing is mandatory, ". . . where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge. If he concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, he may, and ordinarily should, accept the facts as found in the hearing." 372 U.S. at 318, 83 S.Ct. at 760, 9 L.Ed.2d at 789. From a review of the files and records in this case, it may be fairly inferred that the trial court found that the question propounded by Mr. Schwarz was improper and so prejudicial to a fair trial that a mistrial was warranted.[3] The facts were reliably found by the trial court and this Court may rely thereon. The ruling of the trial court in declaring a mistrial and ordering a new trial was permissible under federal standards to prevent perversion of public justice.

The issue presented by the petition herein is controlled by the principles recently enunciated by the Supreme Court of the United States in United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543. The Court reiterated the standards of "manifest necessity" and defeating the "ends of public justice"

2. In *Procunier* the Court stated:
"[A]n applicant for federal habeas corpus is [not] entitled to a new hearing . . . in either the federal or state courts, merely because he can point to shortcomings in the procedures used to decide the issue . . . in the state courts. Our decisions make clear that he must also show that his version of events, if true, would require the conclusion that [he is entitled to relief.]" 400 U.S. at 451, 91 S.Ct. at 488, 27 L.Ed.2d at 529.
In explaining its reasoning, the Court further stated:

"Unless the result of the habeas corpus proceeding turns on disputed issues of historical fact, a rehearing on the issue . . . would be an exercise in futility, since the applicant for federal habeas corpus would not be entitled to relief even if his allegations of historical fact were found to be true." Id. 400 U.S. at 452, 91 S.Ct. at 488, 27 L.Ed.2d at 530.

3. In granting the State's motion for mistrial, the trial court expressly stated that an instruction to the jury could not remedy the prejudice to the State's case. (Tr. 68 and 69.)

which were originally enunciated in United States v. Perez, 9 Wheat 579, 6 L.Ed. 165 at page 166:

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."

In the *Jorn* case the Court refused to accept an interpretation of Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, that would cause the double jeopardy issue to turn on "which party to the case was the beneficiary of the mistrial ruling." In *Gori* the Court upheld a second prosecution after a mistrial, finding that there was no abuse of discretion since the trial judge was acting "in the sole interest of the defendant." In commenting on the "benefit" criterion applied in *Gori*, the Court in *Jorn* stated:

> "Further, we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefitted from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision." 400

U.S. at 483, 91 S.Ct. at 556, 27 L.Ed. 2d at 555.

In exercising his discretion to grant or deny a motion for mistrial in a criminal proceeding, the trial judge must weigh, among other factors, the defendant's "valued right to have his trial completed by a particular tribunal", Wade v. Hunter, 336 U.S. 684 at 689, 69 S.Ct. 834 at 837, 93 L.Ed. 974 at 978, against "the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process." United States v. Jorn, *supra*, 400 U.S. at 486, 91 S.Ct. at 557, 27 L.Ed.2d at 557.

In applying all applicable federal standards to the case at bar, it is found and concluded that the trial judge did not abuse his discretion in discharging the jury. Aguilar's attorney should have known and had ample warning of the unfairness and prejudicial effect of his inquiry in regard to the outcome of the charges against petitioner's brother, a subject clearly and obviously immaterial to the prosecution of the petitioner and highly prejudicial to the State's case. However, with full knowledge of the State's objections and the trial court's admonition, counsel for petitioner intentionally and wrongfully, by a statement of fact disguised as a question, informed the jury of the highly prejudicial and immaterial fact that the case against Gilbert Aguilar had been dismissed. The trial court's order of mistrial was justified and well within its discretion. The mistrial was declared only after a recess was called to weigh deliberately the factual and legal questions presented by the prejudicial question. (Tr. 68.) The impropriety of the question asked by petitioner's attorney can be most vividly illustrated by supposing that the prosecuting attorney had stated in a disguised question that petitioner's brother had been convicted in a separate prosecution. It does not require a vivid imagination to conclude what righteously indignant arguments would be made by petitioner's resourceful counsel in such circumstances.

Upon the facts presented by the record in this case, it is clear that a proper and discriminating discretion was exercised by the trial court in granting the State's motion for mistrial and that there was a manifest necessity for granting the motion in the interests of justice.

It is therefore

Ordered and adjudged that the petition for federal habeas corpus herein be, and it is hereby, denied for failure to exhaust currently available remedies and in the alternative on the merits.