**James MIZELL, Petitioner,**

v.

**The ATTORNEY GENERAL OF the STATE OF NEW YORK and the Warden, Brooklyn House of Detention, Respondents.**

**No. 76 C 2161.**

United States District Court, E. D. New York.

Dec. 29, 1977.

James Mizell, pro se.

Louis J. Lefkowitz, Atty. Gen., New York City (Robert S. Hammer and John M. Farrar, New York City, of counsel), for respondents.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Petitioner, convicted on September 10, 1971 in New York Supreme Court, Kings County, of robbery, petty larceny, assault, and possession of a dangerous weapon, has applied for a writ of habeas corpus, alleging that his conviction violated the double jeopardy clause of the Fifth Amendment, applicable "to the States through the Fourteenth Amendment." *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

The transcripts of the state court proceedings against petitioner and another defendant reveal the following facts. Late in the day on Wednesday, March 24, 1971, a jury of twelve plus two alternates was duly impaneled and sworn. After giving preliminary instructions the judge adjourned the case until the following morning. On that day petitioner's attorney requested a hearing to determine whether identification testimony by the complaining witness was admissible under *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). A hearing was held, and the judge ruled that although previous identifications of the defendants were tainted, the identification made in court could be presented to the jury. The Assistant District Attorney then informed the court that two of the witnesses for the prosecution were not available—one had left for North Carolina because of a death in his family, the other had simply not appeared. Both witnesses had been subpoenaed, and apparently the Assistant District Attorney did not learn of their unavailability until after the jury had been sworn.

Because of the absence of the witnesses the Assistant District Attorney requested a continuance until Monday, March 29. The following colloquy then ensued:

"THE COURT: What am I going to do with that jury, Mr. Turner?

MR. TURNER [Assistant District Attorney]: Your Honor, since the jurors are serving their first week this week, they would be serving next week as well. I don't think it would be a hardship on those jurors because we wouldn't be holding them past their service. However, if the Court feels that it would be a hardship on the jury, then the people would have to move at this time for a discharge of the jury.

THE COURT: Are you so moving?

MR. TURNER: Well, I would first ask that the Court rule on my application to keep the jury.

THE COURT: Denied.

MR. TURNER: Then in that case, your Honor, the people would have to move for a discharge of the jury.

THE COURT: All right, that motion is granted. The Court is basing its ruling the case of the matter of Roy Bland (phonetic) and also the matter of William Maury (phonetic), which is decided in 20 New York 2nd, Page 552. All right, bring in the jury. Discharge them."

After the attorneys for both defendants noted their exception, the judge discharged

the jury. The case was called for trial again on Tuesday, March 30, 1971. The new jury heard evidence for two days and began its deliberations around noon on April 1. At 9:35 that evening, the jury informed the judge, for the second time, that it was deadlocked. The judge thereupon declared a second mistrial. A third trial of petitioner, before a third jury, began on June 21, 1971, and on this occasion he was found guilty.

The Fifth Amendment to the Constitution provides, in relevant part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Petitioner contends that under this clause, made applicable to the State through the Fourteenth Amendment, further proceedings against him were barred after the discharge of the first jury. He so contended in the State Court and on appeal to Appellate Division, Second Department, which affirmed without opinion. The Court of Appeals denied leave to appeal. Respondents acknowledge that petitioner raised the double jeopardy issue in his state appeals. Petitioner having exhausted his state remedies, this court may hear his claim.

I

When petitioner was tried in 1971, the New York Criminal Procedure Law as it then stood provided that:

"A person may not be twice prosecuted for the same offense.

"[A] person 'is prosecuted' for an offense . . . when he is charged therewith by an accusatory instrument filed in a court of this state . . . and when the action . . . [p]roceeds to the trial stage *and a witness is sworn.*" (McKinney's N. Y. Criminal Procedure Law §§ 40.20(1), 40.30(1); L. 1970, c. 996 § 1) (emphasis supplied).

Those provisions simply codified the rule adopted by the New York Court of Appeals in *Bland v. Supreme Court, County of New York,* 20 N.Y.2d 552, 285 N.Y.S.2d 597, 232 N.E.2d 633 (1967), that jeopardy attaches only after a witness has been sworn. In the present case, since the court discharged the jury before a witness had been sworn, the court held petitioner had not been "prosecuted" and his retrial was not barred.

It seems clear that had the proceedings occurred in a Federal court petitioner would prevail. In *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963), the Supreme Court held that discretion to discharge a sworn jury over a defendant's objection and before verdict is to be exercised "only in very extraordinary and striking circumstances" and that the fact that a key witness, who had not been subpoenaed, was absent did not justify discharge of the jury. The *Downum* case established that under the double jeopardy clause of the Fifth Amendment a defendant is placed in jeopardy, that is, jeopardy "attaches", as soon as a jury is sworn. See *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States ex rel. Bland v. Nenna,* 282 F.Supp. 754 (S.D.N.Y. 1968) (Frankel, J.), aff'd 393 F.2d 416 (2 Cir. 1968), cert. den. 392 U.S. 941, 88 S.Ct. 2323, 20 L.Ed.2d 1403 (1968).

This petition presents as the initial question whether the New York statutory rule in effect in 1971, that jeopardy does not attach until a witness is sworn,[1] is consistent with the double jeopardy clause of the Fifth Amendment made applicable to the States by the Fourteenth Amendment.

Prior to the Supreme Court's decision in *Benton v. Maryland, supra,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the double jeopardy clause of the Fifth Amendment had not been thought to be incorporated in terms into the due process clause of the Fourteenth Amendment. In *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), the Court had held that Federal double jeopardy standards were not applicable against the States and that the Four-

---

1. New York amended § 40.30 of the Criminal Procedure Law in 1974 to provide that a person "is prosecuted" when the case "proceeds to the trial stage and a jury has been empaneled and sworn." L.1974, c. 80, § 1.

teenth Amendment did not protect the defendant against double jeopardy unless he were subjected to "a hardship so acute and shocking that our polity will not endure it." 302 U.S. at 328, 58 S.Ct. at 153.

Measured by the standard of the *Palko* decision, what took place in this case could hardly be thought to have violated the Fourteenth Amendment. Palko, though indicted for first degree murder, had been convicted of murder in the second degree after a jury trial and sentenced to life imprisonment. The state appealed, a reversal was obtained, and Palko was convicted after a second jury trial of first degree murder and sentenced to death. If that was not a result sufficiently "acute and shocking" to be deemed prohibited by the due process clause, then surely the discharge of a first jury and a subsequent trial and conviction would not be improper. The New York Court of Appeals in *Bland v. Supreme Court, County of New York, supra,* and Judge Marvin Frankel in *United States ex rel. Bland v. Nenna, supra,* so held prior to *Benton v. Maryland, supra.* In fact the majority in the New York Court of Appeals was of the opinion that "it makes little difference" whether the Federal rule or the then New York rule applied. 20 N.Y.2d at 555, 285 N.Y.S.2d 597, 232 N.E.2d 633.

But thereafter *Benton v. Maryland, supra,* changed the standards applicable to the States, decided that the double jeopardy clause was "fundamental to the American scheme of justice", and held that "the same constitutional standards apply against both the State and Federal Governments", 395 U.S. at 795, 89 S.Ct. at 2063. The Court said that a state conviction "must be judged, not by the watered-down standard enunciated in *Palko,* but under this Court's interpretations of the Fifth Amendment double jeopardy provision." 395 U.S. at 796, 89 S.Ct. at 2063.

Since the *Benton* case it has been consistently either held or assumed that the Federal test of when jeopardy attaches is to be applied to State prosecutions. See, e. g., *Illinois v. Somerville, supra,* 410 U.S. at 467,

93 S.Ct. 1066; *Bretz v. Crist,* 546 F.2d 1336 (9 Cir. 1976), app. pending sub nom. *Crist v. Cline,* 430 U.S. 982 (Docket No. 76–1200); *McNeal v. Hollowell,* 481 F.2d 1145, 1149 (5 Cir. 1973); *Smith v. State of Mississippi,* 478 F.2d 88 (5 Cir. 1973), cert. den. 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740; *People v. Davis,* 79 Misc.2d 137, 359 N.Y.S.2d 637 (Niagara County Sup.Ct.1974).

The State argues that the *Benton* case "left open" the question of when jeopardy is to attach in the State courts and that the time when jeopardy attaches "does not aspire to the constitutional level, but is merely a mechanical or arbitrary 'cutoff point'." But to accept this argument would be to acquiesce in a reversion, at least in part, to "the watered-down standard enunciated in *Palko*", to use the words of the *Benton* opinion, and to reject the Supreme Court's "interpretations of the Fifth Amendment double jeopardy provision."

I do not agree that "it makes little difference" whether the New York or the Federal rule applies or that the difference is merely "technical", as the New York Court of Appeals said in *Bland v. Supreme Court, County of New York, supra,* or "mechanical", as the State argues. A rule which permits a duly sworn jury to be discharged on motion of the prosecution does not protect a defendant's "valued right to have his trial completed by a particular tribunal." *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). At petitioner's first trial, that tribunal had been chosen, and petitioner was prepared to have his guilt or innocence determined by the twelve individuals selected. The next day over his objection he was abruptly deprived of that right. Those twelve people were lost to him, and twelve others seated in their places.

The Supreme Court decisions make it clear the double jeopardy clause protects a defendant's affirmative right to be tried by a particular jury as much as it protects a defendant against prosecutorial overreaching once the trial is well underway.

"[T]he interest of the defendant in having his fate determined by the jury first

impaneled is itself a weighty one . . [T]he lack of demonstrable additional prejudice [will not] preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration." *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973).

As any experienced trial lawyer knows, jurors are not fungible, and juries are not interchangeable. If they were there would be no provision for peremptory challenges of jurors not dischargeable for cause and a criminal defendant would have no interest, "weighty" or otherwise, in a particular jury. But just as each individual is unique so is each jury, composed as it is of different individuals.

In formulating proposed *voir dire* questions, challenging jurors for cause, and exercising peremptory challenges, counsel in a criminal case focus on the individual candidates for service on the jury. And it is not surprising that veteran defense counsel believe that the outcome often depends on the jury selection process. I. Mendelsohn, *Defending Criminal Cases* 61 (1967).

Jurors do not discard their individuality upon entering the jury box, but use their "basic experience with causal relationships and probabilities" in serving as fact-finders. "Note, Community Hostility and the Right to an Impartial Jury", 60 *Colum.L.Rev.* 349, 349–50 (1960). Particular juries also differ as representatives of the community. The panels from which juries are selected must reflect a cross-section of the community, *Taylor v. Louisiana,* 419 U.S. 522, 526–531, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and the number of jurors on a petit jury must be sufficiently large to provide a "fair possibility" for obtaining such a cross-section. *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). However, so long as no systematic exclusion of jurors has occurred, a criminal defendant has no right to a jury on which all sectors of the

community are represented. Cf. *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). A prosecutor may even go so far as to use peremptory challenges to exclude certain groups from a particular jury. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

The composition of a particular jury is crucial, then, to the jury's role as fact-finder, moral voice, and community representative. The replacement of one jury by another may well determine the outcome of a trial [2] and, if beyond the scope of protections of the double jeopardy clause, can become a powerful weapon for prosecutorial abuse.

"If the prosecutor disliked the jury, or some of them . . . he might, at any time, attain his end, if, by solely alleging the want of proof after a jury were sworn, he could get rid of them." *People v. Barrett,* 2 Caines 304, 308–09 (1805).

I hold that the double jeopardy clause guarantees to defendants in State criminal proceedings, no less than to defendants tried in the federal courts, the protection afforded by the rule that jeopardy attaches when a jury has been sworn.

## II

Because "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the double jeopardy clause bars retrial" *Illinois v. Somerville, supra,* 410 U.S. at 467, 93 S.Ct. at 1072, I must consider whether the discharge of the jury "was required by 'manifest necessity' or the 'ends of public justice'." *Id.* at 468, 93 S.Ct. at 1072. The double jeopardy clause requires

"trial judges not to foreclose the defendant's option [to proceed before a particular tribunal] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings . . . [T]he judge must always temper the decision whether or not

---

**2.** It is not without significance that one of the juries which heard the case against petitioner failed to convict him. While petitioner can do

no more than speculate, it is not wholly unreasonable for him to believe that the first jury might have acquitted him.

to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S. 470, 485–86, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971).

Here, the trial court gave no consideration to defendant's interests whatsoever. The prosecutor informed the court of its inability to proceed on a Thursday, and asked for a continuance until Monday. The court refused, for no reason other than an inconvenience to the jury sworn the previous evening. The court had not sequestered the jury, and a continuance would not have required the jurors to serve beyond their appointed term. A continuance would have served as well as a discharge. Under the circumstances, the "ends of public justice" did not require a mistrial, and there plainly was no "manifest necessity" to discharge the jury.

The petition for a writ of habeas corpus is granted. So ordered.