UNITED STATES of America

v.

**John DePRIMA, Defendant.**

**No. 77 CR 329.**

United States District Court,
E. D. New York.

Feb. 22, 1978.

**13.** Complaint Exhibit A at 3.

David G. Trager, U. S. Atty., Brooklyn, N. Y. (Jeffrey H. Kay, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff.

Martin Erdman, New York City (Marion Seltzer, Federal Defenders Services Unit, The Legal Aid Society, Brooklyn, N. Y., of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendant moves to dismiss the indictment on the ground that a further trial would subject him to double jeopardy in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

The case has had a peculiar history. Defendant was charged with violations of the laws against possession and transfer of counterfeit currency. 18 U.S.C. §§ 472, 473. The trial began on December 1, 1977, and the government introduced testimony that defendant had admitted receiving from an informer, one Daniel Dalton, the counterfeit bills in question, and that defendant had accepted payment for the bills from an undercover Secret Service agent. Since the government did not call Dalton as a witness, defendant's attorney argued vigorously in summation that Dalton's absence was a critical weakness in the government's case. The jury was unable to agree on a verdict, and eventually the Court, on application of defendant, declared a mistrial.

On December 12, 1977 a new trial began. This time Dalton testified. He said that he had indeed received the bills from defendant. However, the Court, again on the motion of defendant, declared a mistrial because in the course of cross-examination one of the Secret Service agents made a statement which defendant's attorney contended, and the Court agreed, was improperly prejudicial to defendant.

A third trial commenced on January 3, 1978; a jury was chosen; and the attorneys made their opening statements. Then the Jury Clerk appeared in the courtroom. Out of the presence of the jury he advised the Court and counsel that there was no record in the clerk's files for Juror number 7, who had answered to the name of Frederick T. Dunn. That name did not appear on present or past jury rolls in the clerk's office.

The Court then sought the views of counsel as to the appropriate procedure. Defendant's attorney urged that the trial proceed with Juror number 7 retaining his seat and objected to any questioning of him as to his qualifications or as to the manner in which he had appeared for jury duty. Any such inquiry, defendant's attorney contended, would intimidate the juror. The government requested a recess to consider the matter and upon the reconvening stated that since no one knew the identity of the juror or his possible motives the government requested that he be removed and replaced by an alternate juror. The government did not request a mistrial but asked that the trial continue.

The Court was of the opinion that the trial could not proceed properly if the juror was not qualified to serve and had not been chosen at random in accordance with 28 U.S.C. §§ 1861, et seq. Since defendant had contended, with considerable plausibility, that any questioning of the juror as to his qualifications might intimidate him, the Court decided that the juror should be removed and replaced by an alternate. Defendant's attorney then moved for a mistrial, and the Court granted the motion.

Thereafter the Federal Bureau of Investigation and the clerk's office determined after questioning Juror number 7 that the records contained the name Dunn T. Fred-

erick and that Juror number 7, who answered to the name of Frederick T. Dunn, was the same person carried in the clerk's records as Dunn T. Frederick. This motion to dismiss the indictment on double jeopardy grounds followed.

■ Under the Supreme Court decision in *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), a retrial of defendant is not barred by the Double Jeopardy Clause of the Fifth Amendment. See also *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Weaver,* 565 F.2d 129, 133 (8th Cir. 1977). The application for a mistrial was made not by the government but by defendant, and the Court granted defendant's application in the light of his attorney's contention that any interrogation of the juror as to his qualifications might intimidate him and prejudice defendant.

In the *Dinitz* case the trial judge excluded defendant's trial counsel, one Wagner, after he persisted in improper remarks in his opening statement. The judge asked another of defendant's attorneys, one Meldon, who was attending the trial, whether he was prepared to proceed. After an overnight recess Meldon advised the judge that defendant wanted Wagner and not himself to try the case. The judge then set forth three alternatives: (1) a stay or recess to enable the Court of Appeals to review the propriety of expelling Wagner; (2) continuation of the trial with defendant's then attorneys; or (3) a declaration of a mistrial to permit defendant to obtain other counsel. After consultation with defendant Meldon moved for a mistrial, and the judge granted the motion.

The Court of Appeals held that the judge's exclusion of Wagner and his questioning of Meldon had left defendant "no choice but to move for or accept a mistrial" and that thus the case should be treated as though the judge had declared a mistrial over the objection of the defendant. So viewing the case the Court of Appeals held that the Double Jeopardy Clause barred a second trial because there had been no "manifest necessity" requiring the expulsion of Wagner. 492 F.2d 53, affirmed 8–7 en banc 504 F.2d 854.

The Supreme Court reversed. The Court said that while a new trial after a mistrial has been declared without defendant's request or consent can only be had under the Double Jeopardy Clause where there is "a manifest necessity" for the mistrial or the ends of public justice would otherwise be defeated, "[d]ifferent considerations obtain . . . when the mistrial has been declared at the defendant's request." 424 U.S. at 607, 96 S.Ct. at 1080. The Court reiterated what had been said in *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971), that "where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." 424 U.S. at 607, 96 S.Ct. at 1080. The Court pointed out that when such error has been committed, a defendant may nonetheless wish to go to the jury and perhaps end the case with an acquittal, but that when the prejudice is serious he may wish to abort the trial rather than have a conviction followed by a lengthy appeal and, if reversal is obtained, a further prosecution. A defendant's mistrial request made under such circumstances "has objectives not unlike the interests served by the Double Jeopardy Clause—the avoidance of anxiety, expense, and delay occasioned by multiple prosecutions." 424 U.S. at 608, 96 S.Ct. at 1080.

That a retrial of the defendant in the present case would not be barred by the Double Jeopardy Clause follows *a fortiori* from the decision in the *Dinitz* case. There the Supreme Court assumed there was no "manifest necessity" to expel the attorney. Here a need appeared either to determine that the juror was qualified and appropriately chosen for the panel or to replace him with an alternate.

Sections 1861 through 1875 of Title 28 set forth the qualifications of jurors and provide that the District Court must adopt a

plan for random jury selection, including the drawing of "the names of those randomly selected from a master jury wheel." In the event of "substantial failure to comply" with these provisions either the defendant or the government may move to dismiss the indictment or stay the proceedings. 28 U.S.C. § 1867(a) and (b). Thus, if the "name" of Juror number 7 was not placed in the master jury wheel, there was a "substantial failure to comply" with the statute. Since he answered to and was selected for jury duty under the name of Frederick T. Dunn, a "name" which had not been placed in the master jury wheel, his selection for jury duty may well have constituted a failure to comply with the statute even though the name of Dunn T. Frederick had been placed in the wheel.

In any event, since the name of Frederick T. Dunn was not included in the wheel, the Court was at least required to ascertain the circumstances under which a juror answering to that name had appeared for duty. But defendant objected to any questions of the juror designed to elicit how he had come to be chosen. Defendant thus may not object to the failure to ascertain the facts.

■ Assuming that the failure to include in the jury wheel the name of Frederick T. Dunn did not in itself make the juror's selection a violation of the jury selection statute, the Court had no way of knowing, without making inquiries of the juror, whether there had been compliance with the statute. If the failure to make such inquiries was error, it was committed at what seemed to the Court the plausible insistence of defendant. Under these circumstances a replacement of the juror would not have been in violation of the Double Jeopardy Clause. See *Wade v. Hunter,* 336 U.S. 684, 688–689, 69 S.Ct. 834, 93 L.Ed. 974 (1949); cf. *Mizell v. Attorney General,* 442 F.Supp. 868 (E.D.N.Y.1977).

■ Defendant urges, as the defendant contended in the *Dinitz* case, that he had "no choice" but to move for a mistrial. That is not strictly true. A defendant who moves for a mistrial always has a choice to continue despite the error and hope for acquittal. Defendant here could have chosen to proceed with the trial after the juror had been replaced over his objection by an alternate. Assuming *arguendo* that that replacement would have been error, defendant could in the event of a conviction have secured a reversal. Of course, as the opinion in the *Dinitz* case points out, a defendant when he considers whether to move for a mistrial generally faces a "Hobson's choice" between giving up his chance for acquittal and continuing a trial tainted by prejudicial or prosecutorial error. 424 U.S. at 608–10, 96 S.Ct. at 1080–81. But the opinion in the *Dinitz* case holds that the Double Jeopardy Clause does not require that a defendant be assured of only a single proceeding free from harmful governmental or judicial error. 424 U.S. at 610–11 n. 13, 96 S.Ct. at 1081. See also *United States v. Jorn, supra,* 400 U.S. at 484, 91 S.Ct. at 556.

Defendant also contends that he did not create the circumstances which led to the Court's decision to replace the juror. Even if that were true, the *Dinitz* case makes clear that the Double Jeopardy Clause only bars retrials where there is "bad-faith conduct by judge or prosecutor" so as "to afford the prosecution a more favorable opportunity to convict." 424 U.S. at 611, 96 S.Ct. at 1081, 1082. Here there is no contention that either the clerk's failure to place the name of Frederick T. Dunn in the jury wheel or the Court's decision to replace the juror, was made in bad faith in order to goad defendant into requesting a mistrial or to prejudice his prospects for acquittal.

The motion is denied. So ordered.