SCHWARTZ, Senior Judge.
 

 Notwithstanding that the trial which resulted in the criminal convictions now on appeal may have been free of error, we must discharge the defendant because his
 
 *1081
 
 rights against double jeopardy were violated in an earlier proceeding.
 

 The trial below was the third in which the defendant faced the same charges. In each of the first two — after the jury had been selected, impaneled and sworn, and jeopardy had therefore attached — the trial judge felt it appropriate to grant a mistrial. In each case, this was essentially because of the highly unprofessional, mutually combative conduct
 
 [1]
 
 of both the prosecutor and the defense attorney. The defendant contends that both mistrials were both (a) unjustified and (b) noncon-sensual and therefore invoke the constitutional protection against double jeopardy under the rule stated, for example, in
 
 Williams v. Grayson,
 
 90 So.2d 710 (Fla.1956).
 
 [2]
 
 The resolution of this appeal, however, requires consideration only of the effect of the
 
 second
 
 one. We conclude that ruling alone requires the defendant’s discharge.
 
 [3]
 

 The appellant’s brief fairly relates the circumstances of the second incident:
 

 [The] second jury was selected and the panel sworn on August 18, 2005, with opening argument set to begin August 22, 2005. Prior to the jury entering the courtroom on August 22, 2005, preliminary evidentiary matters were argued before the Court as a continuation of a hearing commenced on August
 

 17, 2005. Before any opening statements could be given, the trial judge effectively halted the trial and discharged the jury without the free and voluntary consent of the defendant. The Court
 
 sua sponte
 
 declared a mistrial, even though there was no error or prejudice that occurred to necessitate a mistrial. The mistrial resulted after another confrontation between the lawyers as follows:
 

 MR. [SYDNEY P.] SMITH (Defense Counsel): Well, even if the crime scene technician comes in and says, yes, I took that picture? I mean I’m going to try and find it your Honor. I’m not trying to wind you up but this is him not bothering to go through his pictures well enough. He had all weekend. He should have done it.
 

 MR. RANCK (Assistant State Attorney): — don’t start—
 

 MR. SMITH: I would ask you not to interrupt please—
 

 MR. RANCK: I will ask you one more time—
 

 MR. SMITH: — I’m not going—
 

 MR. RANCK: — if you ever interrupt me—
 

 MR. SMITH: — don’t interrupt me again—
 

 MR. RANCK: — you asshole—
 

 
 *1082
 
 MR. SMITH: — I mil not tolerate this man—
 

 MR. RANCK: — I will not tolerate—
 

 MR. SMITH: — act like a lawyer. Act like a lawyer.
 

 MR. RANCK: you act like a lawyer.
 

 MR. SMITH: I won’t take that from you.
 

 MR. RANCK: I won’t take it from you.
 

 MR. SMITH: I will not take that from you.
 

 (whereupon the Bailiff entered the room and ended the confrontation while the Judge left the courtroom).
 

 During this exchange the prosecutor had again left his podium, advanced to the defense podium where defense counsel was standing, and placed his nose in contact with trial counsel. He remained in direct face to face contact until ordered to his seat by the bailiff. Defense counsel apparently made no attempt to leave the defense podium.
 
 None of the foregoing took place in front of the jury.
 
 [e.o.] The jury was not in the courtroom and the judge took a brief recess without comment. Once the trial judge came back on the bench, he informed defense counsel the Court would impose the following choices upon the Defense:
 

 THE COURT: Here’s how this is going to play. You’ve got two options. Option 1, you’ll both move for a mistrial and a joint continuance and waive the defendant’s jeopardy rights. I’ll discharge the jury and re-set it and set it for another date for a back up judge to try this case.
 

 Option 2 is, failing that, we will this week proceed to a direct criminal contempt hearing where you’ll both need counsel. You’ll then be referred to the Florida Bar with a copy of this tape to send to them. You take five minutes to discuss it and think about it and decide what it is you want to do.
 

 Trial defense counsel immediately moved to withdraw based on a conflict of interest arguing that the trial court had placed counsel in a position where he had to make a decision between his own personal interests to be free from a criminal contempt prosecution, and the interests of his client’s in preserving his right to a jury trial with the empanelled jury. Only by agreeing to the mistrial and waiving his client’s constitutional rights could defense counsel avoid criminal contempt charges. From the moment the conflict arose until the court permitted him to withdraw, the defendant was represented by counsel with a direct conflict to his interests. Once defense counsel moved to withdraw based on the conflict, the defendant was effectively without an attorney. It was in the intervening period between the time counsel announced his conflict of interest, but before the trial judge permitted him to withdraw, that the Court declared a mistrial.
 

 Upon declaring the second mistrial, Judge Murphy immediately granted defense counsel’s motion to withdraw and recused himself from this case, which was ultimately transferred to the Honorable Barbara Areces.
 

 An analysis of these events shows:
 

 (a) It is first apparent that the conduct of the attorneys did not, within the meaning of the doctrine, create a “manifest necessity” for discharging the jury, so as to preclude a double jeopardy violation. See
 
 United States v. Perez,
 
 22 U.S. at 579-80;
 
 Thomason v. State,
 
 620 So.2d 1234 (Fla.1993);
 
 Williams,
 
 90 So.2d at 713-14;
 
 Rohr v. State,
 
 916 So.2d 1002 (Fla. 2d DCA 2006);
 
 Jackson v. State,
 
 855 So.2d 178 (Fla. 4th DCA 2003);
 
 Perkins v. Graziano,
 
 608 So.2d 532 (Fla. 5th DCA 1992);
 
 *1083
 

 Parce v. Byrd,
 
 533 So.2d 812 (Fla. 5th DCA 1988);
 
 Spaziano v. State,
 
 429 So.2d 1344 (Fla. 2d DCA 1983); see generally
 
 Bertolotti v. State,
 
 476 So.2d 130 (Fla.1985) (“It is appropriate that individual professional misconduct not be punished at the citizens’ expense, by reversal and mistrial, but at the attorney’s expense, by professional sanction.”).
 

 It is even more obvious that the trial court fatally failed in its required duty carefully to consider all reasonable alternatives — including gaining control of the courtroom — to doing so. See
 
 Joseph v. State,
 
 988 So.2d 133 (Fla. 1st DCA 2008);
 
 Rohr,
 
 916 So.2d at 1003;
 
 Torres v. State,
 
 808 So.2d 234 (Fla. 2d DCA 2001);
 
 Spaziano,
 
 429 So.2d at 1345-46. Instead, he seems to have considered none.
 

 (b) Nor may the mistrial be constitutionally excused on the basis of the other possible ground for such a holding: a voluntary act of the defendant, typically by himself moving for the mistrial, which evidences an actual or implied voluntary consent. See
 
 Dinitz,
 
 424 U.S. at 607-10, 96 S.Ct. 1075;
 
 United States v. Goldstein,
 
 479 F.2d 1061 (2d Cir.1973);
 
 Williams,
 
 90 So.2d at 713-14;
 
 Rohr,
 
 916 So.2d at 1003;
 
 Perkins,
 
 608 So.2d at 532-33. Although defense counsel, joined by the State Attorney, indeed
 
 moved
 
 for a mistrial, he did so only because the trial judge threatened that, if they did not, the lawyers would be cited for contempt, referred to the Florida Bar,
 
 [4]
 
 or both. Responding to such a Hob-son’s choice is the absolute antithesis of the
 
 voluntary
 
 relinquishment of the defendant’s right to proceed before his chosen jury which is required to obviate a double jeopardy bar.
 
 Dinitz,
 
 424 U.S. at 606-07, 96 S.Ct. 1075;
 
 Jorn,
 
 400 U.S. at 479-86, 91 S.Ct. 547;
 
 Perez,
 
 22 U.S. at 579-80;
 
 Gold-stein,
 
 479 F.2d at 1066;
 
 United States v. Jamison,
 
 505 F.2d 407, 411-13 (D.C.Cir.1974).
 

 Because the prosecution below is therefore precluded by the prohibition against being “subject for the same offense to be twice put in jeopardy of life or limb,” U.S. Const, amend. V, the convictions under review are reversed with directions to discharge the defendant.
 

 Reversed.
 

 [1]
 

 . In the first trial, this conduct descended into a physical altercation. The circumstances of the second mistrial are set out below.
 

 [2]
 

 . After both incidents, the defendant filed petitions for prohibition on double jeopardy grounds.
 
 Chapinoff v. State, 920
 
 So.2d 7 (Fla. 3d DCA 2006)(table);
 
 Chapinoff v. State,
 
 910 So.2d 272 (Fla. 3d DCA 2005)(table). Both were denied without addressing the merits. Thus, neither ruling was res judicata to the present case. See
 
 Topps v. State,
 
 865 So.2d 1253 (Fla.2004).
 

 [3]
 

 . We thus pretermit discussion of the validity of the double jeopardy argument as to the
 
 first
 
 mistrial, in which the determinative issue is whether the defendant effectively withdrew the motion for mistrial purportedly granted by the trial court. See
 
 United States v. Dinitz,
 
 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976);
 
 United States v. Jorn,
 
 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971);
 
 United States v. Perez, 22
 
 U.S. 579, 9 Wheat. 579, 6 L.Ed. 165 (1824);
 
 United States v. Jamison,
 
 505 F.2d 407 (D.C.Cir.1974);
 
 State ex rel. Manning v. Himes,
 
 153 Fla. 711, 15 So.2d 613 (1943).
 

 [4]
 

 . Particularly in view of the ultimate consequences of their unprofessionalism — the fact that a convicted defendant must go free — it may not be too late to pursue this course.
 
 Bertolotti,
 
 476 So.2d at 133-34.