NO. 12-02-00124-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JAMES DAVID FRYE,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW #2


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 James David Frye appeals from the denial of his application for a pretrial writ of habeas
corpus. In three issues, Appellant contends that double jeopardy bars the State's prosecution for
driving while intoxicated. We affirm the trial court's order.


Background

 Appellant was charged by information with the offense of driving while intoxicated. A jury
trial began. Officer J. E. Smith ("Officer Smith") explained that he investigated an accident
involving Appellant. He determined that Appellant had been drinking alcoholic beverages and asked
Appellant to perform sobriety tests. One of the tests Appellant performed is the horizontal gaze
nystagmus (HGN) test which Officer Smith described as a good indicator of intoxication. Officer
Smith explained the test to the jury in detail, describing the six "clues" he looks for that indicate
intoxication. He stated that he found all six clues when he administered the test to Appellant. The
prosecutor then asked, "How many clues do you need . . . to have on the horizontal gaze nystagmus
before you feel comfortable determining if somebody is intoxicated or not?" Officer Smith replied,
"If the person exhibits four of the six clues, it's indicative their blood alcohol is over .10." He then
repeated the fact that Appellant had all six clues. 

 The prosecutor asked Officer Smith to perform the HGN test on him to demonstrate for the
jury. Officer Smith explained what he looks for when administering the test and stated that if a
sufficient number of clues are present "their blood alcohol is going to be .10 or greater." At the
conclusion of the demonstration, Appellant objected, arguing that the testimony is inappropriate and
the witness is not qualified to present that testimony. The jury was removed from the courtroom and
a hearing ensued. Appellant repeated his objection that the witness was not qualified as an expert. 
The trial court overruled that objection but told the State to respond to the issue of "putting a number
figure on the HGN." After argument from both sides and testimony by Officer Smith, the trial court
sustained the objection to the officer's testimony that presence of HGN clues indicates that the
individual tested has a blood alcohol content of .10 or greater. The trial court denied Appellant's
motion for mistrial. The court found the prosecutor did not make an intentional mistake and then
instructed the prosecutor to explain to Officer Smith exactly what he was allowed to say in front of
the jury. 

 The jury returned to the courtroom and the trial court instructed it to disregard Officer
Smith's answer "in response to the last question concerning a precise blood alcohol concentration
level and the administration of the horizontal gaze nystagmus test to the defendant." Direct
examination of Officer Smith resumed. He explained the sobriety tests Appellant performed and
stated that, because Appellant had lost the normal use of his mental and physical abilities, he placed
Appellant under arrest for driving while intoxicated. The prosecutor then asked Officer Smith "what
does that tell you" if someone exhibits four clues on the HGN test. Officer Smith replied, "It would
indicate that their state of intoxication is greater than the legal limit." Appellant again objected and
requested a mistrial based on the officer's inadmissible testimony. The trial court granted the
mistrial. Appellant later filed an application for a pretrial writ of habeas corpus and a motion to
dismiss on double jeopardy grounds. The trial court denied the application.


Double Jeopardy

 In three issues, Appellant asserts the trial court erred in denying his pretrial application for
a writ of habeas corpus and motion to dismiss on double jeopardy grounds. He asserts that a second
trial would offend both the Fifth Amendment to the United States Constitution and article one,
section fourteen of the Texas Constitution. Appellant contends that the prosecutor should have
known that his intended question, and the answer he knew he would elicit, crossed the line between
legitimate adversarial gamesmanship and manifestly improper methods and created a substantial risk
that a mistrial would result. A retrial, he argues, would violate his due process rights and his right
not to be subjected to double jeopardy under the United States and Texas Constitutions.


Applicable Law

 Generally, the denial of habeas corpus relief is within the discretion of the court considering
the habeas petition. Hill v. State, 79 S.W.3d 682, 686 (Tex. App.-Amarillo 2002, pet. ref'd). On
appeal, the ruling of such court will be upheld unless its ruling is an abuse of discretion. Id. Where,
as here, a reporter's record of the hearing on the application for writ of habeas corpus is presented,
almost total deference is given to the trial court's determinations of historical facts with support in
the record, fact determinations involving an evaluation of credibility or demeanor, and rulings on
questions involving application of law to fact if the resolution of those ultimate questions turns on
an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997) (en banc).

 The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars
retrial if the trial court, with the defendant's consent, grants a mistrial as a result of intentional
prosecutorial misconduct. See Ex parte Mitchell, 977 S.W.2d 575, 580 (Tex. Crim. App. 1997)
(citing Oregon v. Kennedy, 456 U.S. 667, 679, 102 S. Ct. 2083, 2091, 72 L. Ed. 2d 416 (1982)). A
prosecutor engages in intentional misconduct when he purposefully forces a termination of a trial
in order to repeat it later under more favorable conditions. Bauder v. State, 921 S.W.2d 696, 698-99
(Tex. Crim. App. 1996) (Bauder I). 

 The Texas Constitution bars retrial if the trial court, with the defendant's consent, grants a
mistrial as a result of reckless prosecutorial misconduct. Id. at 699. A prosecutor's offer of evidence
constitutes reckless misconduct under the Texas Constitution when (1) he believed the evidence
would materially improve his chances of obtaining a conviction, and the law considers the
prejudicial effect of such objectionable evidence to be incurable even by a firm judicial
admonishment to the jury, or (2) he was aware but consciously disregarded the risk that an
objectionable event for which he was responsible requires a mistrial at the defendant's request or he
was aware but consciously disregarded the risk that a mistrial would be reasonably certain to occur
as a result of his conduct. State v. Lee, 15 S.W.3d 921, 925 (Tex. Crim. App. 2000).

 Whether jeopardy bars a retrial when a mistrial is granted with the defendant's consent turns
on whether the defendant truly consented to the mistrial. See Ex parte Bauder, 974 S.W.2d 729,
731-32 (Tex. Crim. App. 1998) (Bauder II). Whether a defendant truly consented depends upon
whether the motion was simply a choice he made in response to ordinary reversible error to avoid
conviction, appeal, reversal, and retrial or whether it was required because of the prosecutor's
deliberate or reckless conduct that rendered the trial incurably unfair. Id. at 732. If the
circumstances prompting the mistrial were attributable to a prosecutor's using "manifestly improper
methods . . . deliberately or recklessly" which "render trial before the jury unfair to such a degree that
no judicial admonishment can cure it, an ensuing motion for mistrial by the defendant cannot fairly
be described as the result of his free election." Id. (quoting Bauder I, 921 S.W.2d at 698). But,
where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by
the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the
defendant's motion is necessitated by prosecutorial or judicial error. Id. (quoting U.S. v. Jorn, 400
U.S. 470, 485, 91 S. Ct. 547, 557, 27 L. Ed. 2d 543 (1971)).

 The Texas Court of Criminal Appeals has explained the law regarding admissibility of HGN
test results. A witness qualified as an expert on the administration and technique of the HGN test
may testify concerning a defendant's performance on the HGN test, but may not correlate the
defendant's performance on the HGN test to a precise blood alcohol concentration. Emerson v.
State, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). Without using the phrase, the penal code
specifies "the legal limit" by defining the term "intoxicated" as having an alcohol concentration of
.08 or more. Tex. Pen. Code Ann. § 49.01(2)(B) (Vernon Supp. 2003). Although not a numeric
term, the phrase "over the legal limit" is tantamount to quantification. See Webster v. State, 26
S.W.3d 717, 723 (Tex. App.-Waco 2000, pet. ref'd) (Prosecutor's question asking officer to
correlate defendant's performance on the HGN test to a conclusion that his blood alcohol
concentration exceeded the legal limit is impermissible under Emerson.). 

 A prompt instruction to disregard generally renders harmless any error arising from
improperly admitted testimony. Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). This
is so except in extreme cases where it appears that the evidence is clearly calculated to inflame the
minds of the jury and is of such a character as to suggest the impossibility of withdrawing the
impression produced on their minds. Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App.
1987).


Discussion

 At the hearing on the application, the prosecutor, who at the time of trial had been a licensed
attorney for approximately three months, testified that he was "somewhat familiar" with applicable
case law. He instructed the officer not to use numbers when talking about the HGN test results but,
instead, to use more broad terms like "they were intoxicated." In his discussion with Officer Smith,
the officer indicated he wanted to use the phrase "over the legal limit of intoxication." The
prosecutor said he shrugged and told him, "well, just intoxication." He testified that he did not know
he was close to "mistrial grounds" and he was not trying to cause a mistrial. On the contrary, he was
pleased with the makeup of the jury and with how the trial was going. Further, the State had a video,
a breath test, and all of the field sobriety tests to rely on. Significantly, at the time of Appellant's
motion for mistrial, the prosecutor argued that they were attempting to explain to the jury that the
HGN test shows signs of intoxication. At the close of the hearing on Appellant's application, the
trial court specifically found that the prosecutor's conduct was not intentional.

 At the hearing on the application, Officer Smith stated that he could not remember the exact
words he was allowed to say. He first testified that he thought he was not allowed to say a
defendant's blood alcohol content is .10 or greater, but that he could say it was above the legal limit
of intoxication. He then testified that the prosecutor told him he could not quantify, but he could
explain to the jury that HGN could give you a clue someone is intoxicated over the legal limit. He
also stated that he did not intend to cause a mistrial.

 We give almost total deference to the trial court's finding that the prosecutor did not act
intentionally. Guzman, 955 S.W.2d at 89. Further, the record supports this finding. Emerson
prohibits testimony correlating a defendant's performance on the HGN test to a precise blood alcohol
concentration. Emerson, 880 S.W.2d at 769. The prosecutor told the officer to use broad terms and
not to use numbers. The officer was uncertain as to the exact words the prosecutor had used in his
instructions to the officer. The prosecutor explained to the trial court that they were trying to explain
to the jury that HGN test results show signs of intoxication. This, too, is consistent with Emerson. 
There the officer testified that the defendant, who showed all six clues, was intoxicated. The court
of criminal appeals determined that the officer's testimony was not an attempt to quantify the
defendant's exact blood alcohol content. Id. We conclude that, rather than intentionally forcing a
mistrial, the prosecutor was attempting to apply Emerson.

 Again giving deference to the trial court's determination of credibility of the witnesses, we
see no indication in the record that the prosecutor consciously disregarded any risk that might lead
to a mistrial. See Lee, 15 S.W.3d at 925. On the contrary, as explained above, the prosecutor was
trying to apply the law properly. Therefore, the admission of the officer's objectionable testimony
is "ordinary reversible error." Id. at 924. The prosecutor did not "cross the line between legitimate
adversarial gamesmanship and manifestly improper methods that rendered trial before the jury unfair
to such a degree that no judicial admonishment could have cured it." Id. Accordingly, the record
supports a finding that Appellant truly consented to the mistrial in response to ordinary, reversible
error and not because of prosecutorial overreaching. Bauder II, 974 S.W.2d at 732. Therefore,
Appellant's motion for mistrial removed any barrier to reprosecution. Id. 

 Finally, we note that granting Appellant's motion for mistrial was not necessary. As stated
above, the court of criminal appeals, in Emerson, was not offended by the witness's testimony that
the defendant was intoxicated. Emerson, 880 S.W.2d at 769. Here, the officer did not state
Appellant's specific blood alcohol content. He referred to "quantification" only by inference. His
earlier testimony specifically stating that, where an individual exhibits four clues, it is indicative that
his blood alcohol is over .10, twice came in without objection. Additionally, it was the trial court
that initially raised the objection to using HGN evidence to quantify Appellant's blood alcohol
concentration. The trial court instructed the jury to disregard the second reference to a specific blood
alcohol concentration. The only inadmissible testimony to which there was an objection was the
inference.

 As this is not an extreme case, we fail to see why this error could not have been cured with
a proper instruction to the jury. See Ovalle, 13 S.W.3d at 783; Gardner, 730 S.W.2d at 696. A
subsequent prosecution is not barred by jeopardy where, as here, the trial court need not have granted
the defendant's motion. Bauder II, 974 S.W.2d at 731.


Conclusion 

 We conclude that retrial of this cause is not barred by the double jeopardy clause of the Texas
Constitution or the federal constitution. The trial court did not abuse its discretion in denying
Appellant's application for writ of habeas corpus. Hill, 79 S.W.3d at 686. We overrule Appellant's
first, second, and third issues.

 We affirm the order of the trial court.



 SAM GRIFFITH 

 Justice



Opinion delivered December 31, 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.




















(DO NOT PUBLISH)